M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CLEVELAND THOR ADAMS,<br>Defendant. | Case No. 4:06-cr-0009-RRB<br>**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS PHOTOGRAPHIC LINEUP IDENTIFICATION AND IN-COURT IDENTIFICATION** |

I. INTRODUCTION

On May 25, 2005, the True North Federal Credit Union located at 901 Cushman Street was robbed by a black male wearing a white mask over his face and dressed in a grey hooded sweatshirt. Several witnesses reported that the robber fled in a dark colored Ford Taurus or Mercury Sable. A lookout was issued for vehicles matching the description.

Approximately 45 minutes after the robbery, a dark blue Mercury Sable was observed at 1116 27th Avenue. Law enforcement ran the license plate on the vehicle and discovered that it was registered to a Marvin Thurmond and had a transfer pending to

Sylvia and Lindsey Thurmand. Officer Nolan of the Fairbanks Police Department looked inside the vehicle and observed a pair of white and red shoes behind the driver's seat. He also noticed that the driver's seat was extremely reclined back.

Officer Nolan watched the vehicle for about five minutes and then left the area. Shortly after leaving the area of 27th Avenue, Nolan drove to Turner Street to investigate an unrelated matter. When Nolan arrived at 1456 Turner Street, Nolan noticed that the same Mercury was parked in the parking lot. Officers made contact with the owner, Lindsey Thurmond, who gave consent to look inside the car. Inside the vehicle, the officers found a dark grey hooded seat jacket, two bundles of one dollar bills, and numerous bundles of money in different denominations. The officers suspected that these items were connected to the robbery. Ms. Thurmond reported to the officers that she had loaned her vehicle to a friend named Cleveland Adams earlier that day. Law enforcement impounded the vehicle for further investigation and declared Cleveland Adams a suspect in the credit union robbery.

At approximately 6:00 p.m., three hours after the robbery, Jason Roth and his mother, Beverly Roth, were showing some rental property to Tiffany Mallard at 1445 Laurene Street. While his mother was escorting Ms. Mallard to her vehicle, Mr. Roth noticed a man near the shed on the back of the property. He described the man as a black male in his mid-twenties weighing approximately 170 lbs. Mr. Roth estimated the man to be about 67 inches tall and wearing a white t-shirt and tan pants.

As Ms. Mallard started to get into her vehicle, the man approached her and offered her $100 for a ride. Ms. Mallard declined his offer. At that time Ms. Roth approached them to see if there was a problem. Ms. Mallard took that as an opportunity

to get into her vehicle and drive off. The man then asked the Roths for a ride and offered them $100. They turned him down. He asked again and showed them a large stack of money. They again turned him down. The Roths watched as the man began to walk south on Loraine. The Roths then left the area.

As the Roths were exiting the area, they turned on to Turner. There, they both saw several men standing around a flat bed truck. The truck was in the process of loading a car. Both believed that what they were witnessing was the police impounding someone's vehicle and thought nothing of the event.

On May 27, 2005, two days following the robbery, Mr. Roth contacted the Fairbanks Police Department after reading an article in the Fairbank's New-Miner regarding the robbery of the credit union. Attachment C. The article described the robber as a light-skin black man between the ages of 17 and 23, weighing 160 pounds and being about 5' 7''. Attachments C. He contacted the police and reported the unusual contact that he and his mother had experienced on Laurene Street. At the end of the interview he was shown a photo spread containing a picture of Cleveland Adams in position number 1. Attachment A. He identified Adams as the man that had asked him for a ride on Laurene Street. At the state grand jury, Mr. Roth testified that the photo lineup he was shown contained only one other light skin male. Attachment B at 197.

Ms. Roth was showed the same photo lineup following Mr. Roth's identification. She also identified Cleveland Adams as the man who asked her for a ride. Ms. Mallard was unable to positively identify anyone from the lineup.

## II. ARGUMENT

### A. The Photographic Array Was Unduly Suggestive

Mr. Adams objects to the use of the photo array in question to make an identification of him as the man asking for a ride on Laurene Street the day of the robbery. His identification through the use of the photo array violated due process. The photo array contains photos which make Mr. Adam's photograph conspicuous and outstanding among the group. For example, his picture is the only photo that does not have the driver's license state seal in the corner, suggesting that the other five were obtained from DMV while his photo was obtained from some other source such as a booking photograph. Mr. Adams believes the photo array is of such character that a viewer's eye would be naturally drawn to his visage as photographically depicted.

"An identification procedure is suggestive when it 'emphasize[s] the focus upon a single individual' thereby increasing the likelihood of misidentification." United States v. Montgomery, 150 F.3d 983, 992 (9th Cir.), cert. denied, 119 S. Ct. 267 (1998); (quoting United States v. Bagley, 772 F.2d 482, 493 (9th Cir. 1985)). Factors that make the suspect's photo remarkable distinguishable from the other photos in the lineup due to background, type of photo, or skin tone are relevant factors to consider. United States v. Carbajal, 956 F.2d 924, 929 (9th Cir. 1992). A review of the attached photo array shows the distinction between the DMV photos of the other men and Mr. Adam's photo. Mr. Roth's comments to the state grand jury certainly establishes the outstanding skin tone.[1] As such, the photo array differentiates Mr. Adam photographically from the other

[1] Mr. Adams has only had the opportunity to view a color copy of the original lineup. He asserts that a viewing of the original lineup is necessary to ascertain the distinction.

depicted individuals, drawing immediate attention of the viewer to his photo. This is an unfair and impermissibly suggestive use of the photo lineup procedure.

B. In Determining Whether Lineup Was Overly Suggestive, The Court Must Examine Law Enforcement Procedure

The Supreme Court has cautioned that "[a] major factor contributing to the high incidence of miscarriage of justice has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." United States v. Wade, 388 U.S. 218 (1967). Discovery provided to date is void of any information concerning the methods used by the Fairbanks Police Department in presenting the photo arrays to the witnesses. The extent to which law enforcement may have directed witnesses towards Mr. Adams' picture is a relevant factor that must be explored. Were the witnesses read a photo lineup advisement informing them that the suspect may or may not be depicted in the lineup? What instruction did each witness receive? See United States v. Field, 625 F.2d 862, 865 (9th Cir. 1980) ("Suggestive pre-trial photo spread procedures may taint in-court identifications sufficient to deny the accused due process of law."). An evidentiary hearing is necessary to develop the facts surrounding the identification process.

C. In-court Identification Must Be Prohibited

An in-court identification of a defendant is excludable if tainted by a pre-accusatorial identification procedure that was so "impermissibly suggestive to give rise to a very substantial likelihood of irreparable misidentification." United States v. Carbajal, 956 F.2d 924 (9th Cir. 1992) (citations omitted). The touchstone to the admissibility of an in-court identification is "reliability of the witness' identification. And,

> [t]he factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Manson v. Brathwaite, 97 S. Ct. 2243, 2253 (1977), citing Neil v. Biggers, 409 U.S. 188 (1972). Here, Mr. Roth's identification has been tainted by the information he gathered from the newspaper and by the suggestive lineup. Mr. Adams moves to suppress the in-court identification testimony as tainted by the out-of-court error. Foster v. California, 394 U.S. 440 (1969); see also Simmons v. United States, 390 U.S. 377 (1968) (defense may move to suppress in-court identification that is fruit of out-of-court photographic display that was overly suggestive or unfair); United States v. Field, 625 F.2d 862, 865 (9th Cir. 1980) ("suggestive pretrial photo spread procedures may taint in-court identifications sufficient to deny the accused due process of law.").

A pretrial hearing to determine whether in-court identification evidence must be suppressed is essential to protect Mr. Adams' due process and other rights, and will promote efficiency during trial proceedings. United States v. Allison, 414 F.2d 407 (9th Cir.), cert. denied, 396 U.S. 968 (1969); United States v. Danvenport, 753 F.2d 1460, 1462 (9th Cir. 1985).

## III. CONCLUSION

A pretrial identification procedure that is so unduly suggestive as to give rise to a substantial likelihood of misidentification at trial violates due process. See, e.g., United States v. Jones, 84 F.3d 1206, 1209 (9th Cir. 1996). "[R]eliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S.

98, 114 (1977). Because of the suggestive nature of the photo lineup in question, its use at trial must be precluded.

DATED this 6th day of April, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Georgia Bar No. 316531
601 West 5th Avenue, Suite 800
Anchorage, AK 99501
Ph: (907) 646-3400
Fax: (907) 646-3480
mj_haden@fd.org

Certification:

I certify that on April 6, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Bryan Schroder, Esq.

/s/ M. J. Haden