DEBORAH M. SMITH
Acting United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: bryan.schroder@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLEVELAND THOR ADAMS,<br><br>Defendant. | Case No. 4:06-cr-009 (RRB)<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHOTO LINE-UP EVIDENCE AND IN-COURT IDENTIFICATION** |

COMES NOW the United States of America, by and through the under-signed Assistant U.S. Attorney, and responds in opposition to defendant's motion to suppress photographic lineup identification and in-court identification.

I.   INTRODUCTION

The Defendants motion to suppress evidence of the photo lineup and any subsequent in-court lineup should be denied.  The photo lineup used by the law

enforcement officers was not impermissively suggestive. The lineup put together by the Department of Motor Vehicles showed 6 photos of individuals with similar appearance. The only difference was minor, that the State of Alaska seal is partially visible in the photos of the others in the lineup. Minor differences do not make a photographic lineup suggestive, much less impermissibly suggestive. Moreover, even if the lineup were impermissibly suggestive, the identification is reliable using the test established by the Supreme Court in Neil v. Biggers, 409 U.S. 188, 199 (1972). Thus, evidence of the photographic lineup, along with any appropriate in-court identification, is admissible. Because the court does not need additional evidence to determine that the photographic lineup was not suggestive, the Defendant's motion for an evidentiary hearing should also be denied.

II.   FACTS

On May 25, 2005, at approximately 3:00 PM, a gunman robbed the True North Federal Credit Union in Fairbanks Alaska. The gunman was consistently described by witnesses at the bank as modest in height and weight, in his early 20's, and African-American. He was dressed in a dark hooded sweatshirt with the hood up and a bandana around his nose and mouth. The gunman brandished a semi-automatic handgun, and demanded money from the teller. The teller placed money in a black plastic garbage bag, and the gunman fled. The bank determined the amount of money taken by the gunman as $17, 695.00.

Approximately 3 hours later, the owners of a property at 1445 Laurene Street, along with a prospective tenant, had an unusual encounter. The owners are a man and his mother. The man was working in a shed on the property when he saw a young African-American man who apparently intended to enter the shed.

The owner described the man as 67 inches tall (5' 7") and 170 pounds. The man was wearing a white t-shirt, and had tattoos on his arms. When the man saw the owner in the shed, he changed directions, did not enter the shed, and walked toward the dwelling. Soon after, the mother and prospective renter emerged from the building, with the prospective renter going to her car. The African-American man approached her and asked for a ride, which she denied. She then left. The African-American man then returned to the owners, both the man and his mother and asked them for a ride to the corner of Laurene Street and the Airport Access Road, only a few blocks away. When they initially declined, he pulled a large amount of money from his pocket, told them that he had $15,000, and that he would give them $100 for a ride. When they declined again, he departed on foot.

A few minutes later, as the owners were leaving the property, they saw men that appeared to be police officers loading a car onto a flatbed truck on Turner Street. The owner and his mother were not aware of the events after the credit union robbery that led to their encounter with the defendant. The car being loaded matched the description of a car leaving the scene of the robbery. At the time of the robbery, a witness reported seeing a man in a dark hooded sweatshirt carrying a black plastic garbage bag run away from True North Federal Credit Union and drive away in a dark-colored Mercury Sable. Later, a dark-colored Mercury Sable was discovered at 1456 Turner Street. The owner of the vehicle, who arrived to retrieve it after police had arrived on scene, told police that she had loaned the vehicle to Cleveland Adams earlier that morning. She gave officers permission to search the vehicle, and they found a dark grey hooded sweatshirt, and approximately $3000 in cash. Most of the cash was paper-clipped together, according to denomination, the way the tellers at True North Federal Credit Union organized

cash in their drawers.  At approximately the same time, the owners of the Laurene Street property were having their encounter with the Defendant.

The owner of the property on Laurene Street called the Fairbanks Police Department on May 27 to report his encounter.  He met with detectives at the Fairbanks Police Department headquarters and gave them an oral statement.  The man was asked to view the photo line-up at Docket 20, Exhibit A, and he immediately identified the man in slot #1 of the lineup as the man he encountered at his property on Laurene Street on May 25.  The photo lineup was prepared by the Alaska Department of Motor Vehicles using drivers license photos, according to standard procedure used by the Fairbanks Police Department.

The Detective then went to the home of the other owner, the mother, and interviewed her.  She also described the man as African-American, 67 inches tall (5' 7") and 170 pounds, with short hair.  He wore a white t-shirt and was approximately 22 years old.  When she was shown the photo line-up, she quickly selected photo #1, Cleveland Adams.

III.   THE PHOTO LINE-UP IS NOT IMPERMISSABLY SUGGESTIVE.

The standard for reviewing the suggestiveness of a photo lineup is whether the photo lineup is: "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. U.S. v. Carbajal, 956 F.2d 924, 929 (9th Cir. 1992) (quoting Simmons v. U.S., 390 U.S. 377, 384 (1968)).

Courts have commented on certain factors which make for an acceptable photo lineup.  Photographs that are all in color, the same size, were taken from similar distances, and contain suspects of similar appearance all contribute to a photo lineup that is not impermissibly suggestive. Griffey v. Lindsey, 345 F.3d

1058, 1068 (9th Cir. 2003). While the participants in a lineup must be "fairly similar," there is no requirement to be "nearly identical." Van Tran v. Lindsey, 212 F.3d 1143, 1156-57 (9th Cir. 2000).

     A review of some of the facts of Ninth Circuit cases point out the high burden that the Defendant must overcome in order to suppress identification. In Carbajal, the court found no problem with a photo identification in which the defendant was the only one with discernable bruises, finding this was insufficient to give rise to a very substantial likelihood of irreparable misidentification. Minor differences in the photographs does not render the photo lineup impermissably suggestive. In U.S. v. Collins, 559 F.2d 561, 563 (9th Cir. 1977), the court found that a photo lineup where the defendant was the only person with a beard, and only one of three with an Afro hairstyle was not impermissibly suggestive. In U.S. v. Barrett, 703 F.2d 1076, 1084-85(9th Cir. 1983), the court examined a photo lineup where the defendant was wearing darker glasses in a case where the witnesses had described the bank robber as wearing dark glasses. The court found that darker photosensitive glasses did not "serve to single out Barrett from the others." Similarly, in Featherstone v. Estelle, 948 F.2d 1497, 1505 (9th Cir. 1989), the court found no error in using a full face photo lineup where the assailant had worn a mask during a bank robbery. Finally, and of direct importance to the allegations made by the Defendant about skin tone, in U.S. v. Nash, 946 F.2d 679, 681 (9th Cir. 1991), the Ninth Circuit Court of Appeals found that a photo spread where one photo was of a Latino man, only the defendant and two others had light complexions and only the defendant and one other had Afro hairstyles, was not suggestive. Slight skin tone differences, as alleged by the Defendant, do not make the photo lineup suggestive.

In this instance, the only difference alleged by the Defendant is that a portion of the Alaska State Seal is visible in all photos except the photo of the Defendant. The Alaska Department of Motor Vehicles reports that the difference is due to the recent photograph of the Defendant on file with DMV. More recent photos are taken digitally, and do not show the Alaska Seal. Older photos still show the seal. This minor difference was not done intentionally, and does not indicate in any way that the Defendant has a different status as the other men in the lineup. Moreover, the difference could have benefitted the Defendant because his photo was the only one in the lineup without a mark that tied the photo to the state. The individuals viewing the lineup have no indication that the photos were provided by DMV. Thus, they might assume that the State Seal comes from law enforcement-related photographs, such as a mug shot. The Defendant's photo had no such indication. Thus, the difference in the photos carries mixed signals, and such signals do not make the lineup impermissibly suggestive. U.S. v. Duran-Orozco, 192 F.3d 1277, 1282 (9thCir. 1999).

IV.  THE IDENTIFICATION IS SUFFICIENTLY RELIABLE, EVEN IF THE PHOTOGRAPHIC LINEUP WERE DETERMINED TO BE UNDULY SUGGESTIVE.

Even if the court were to determine that the photo lineup was impermissively suggestive, due process does not require the suppression of identification evidence. United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985). Rather, the determination the court must make is whether, in light of the totality of surrounding circumstances, the pretrial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United

States, 390 U.S. 377, 384 (1968). The Simmons test referred to a subsequent in-court identification based on a previous out-of-court identification. The same standard applies, without the term "irreperable," for determining the admissibility of testimony about the out-of-court identification itself. Biggers at 198.

"It is the likelihood of misidentification which violates a defendant's right to due process ...." Id. Thus, even unnecessarily suggestive pretrial procedures do "not violate due process so long as the identification possesses sufficient aspects of reliability." Manson v. Brathwaite, 432 U.S. 98, 106 (1977).

In Neil v. Biggers, the Supreme Court set forth certain factors to be considered by determining whether identification testimony possesses sufficient indicia of reliability to justify its admission at trial:

The opportunity of the witness to view the criminal at the time of the crime,

The witness' degree of attention,

The accuracy of the witness' prior description of the criminal,

The level of certainty demonstrated by the witness at the confrontation and,

The length of time between the crime and confrontation.

Biggers at 199.

Both of the owners of the property on Laurene Street had ample opportunity to view the Defendant. They viewed him from the time he appeared to the man in the shed, through his approach to potential renter as she was leaving, to his direct conversation with both of the owners, asking them for a ride and showing his pocket full of cash. While the existing statements do not indicate the total time of the confrontation, it was certainly 2-5 minutes. Times as limited as 30 to 60 seconds have been held by the courts to be "a fairly good opportunity" to observe a suspect. Gray v. Klauser, 282 F.3d 633, 640 (9th Cir. 2002). See also, Carbajal at 929.

Both witnesses had their attention focused on the Defendant. His odd behavior, including flashing a large amount of cash, offering $100 for a ride only a few blocks, and saying he had $15,000, would have gotten anyone's attention. Moreover, both the owners described the Defendants behavior as "nervous" and "odd," showing that they were focused on him.

Prior to identifying the Defendant in the photo lineup, both the owners gave accurate descriptions. The man described the Defendant as an African-American in his mid-twenties, 67 inches tall, approximately 170 pounds, and having tattoos on his arms." His mother described the man as African-American, 67 inches tall (5' 7"), 170 pounds, with short hair, and approximately 22 years old. This is consistent with the Defendant's actual appearance.

According to reports of the investigating officers, both owners, when shown the photo lineup, "immediately" and "quickly" picked out the Defendant.

The length of time between the encounter on Laurene Street, and the photo identification was less than 2 days. A period of 2 days from the encounter to the photo lineup has certainly been held a reasonable amount of time for the witness to be able to identify the offender. Braithwaite at 108. Courts have been easily satisfied by longer periods as well, finding a photo lineup identification reliable when the length of time between the incident and the procedure was "only two weeks." U.S. v. Barrett, 703 F.2d 1076, 1085 (9th Cir. 1983). In Biggers, the case that established the five criteria, the Supreme Court accepted a seven month gap between the incident and the identification. Biggers at 201.

Prior to Biggers, the Supreme Court also considered necessity as a factor in identification cases. U.S. v. Simmons, 390 U.S. 377, 384-85 (1968). In the instant case, like Simmons, law enforcement agents were investigating a serious felony, and

the robber was still at large.  The law enforcement officers needed to know whether they were on the right track in focusing on the Defendant.  The photo lineup was necessary.

At the end of the day, as long as the photo lineup does not reach the level of "a very substantial likelihood of irreparable misidentification," the courts have left it to the jury to weigh the evidence.  <u>Gray v. Klauser</u>, 282 F.3d 633, 639-640 (9th Cir. 2002).  In this context, the Supreme Court has recognized the jury's elemental role in determining the final importance of the evidence:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

<u>Braithwaite</u> at 116.

## V.   EVIDENTIARY HEARING

There is no need for an evidentiary hearing on the facts of this case.  The Defendant is not entitled to an evidentiary hearing unless his submissions to the court in support of her motion are sufficiently definite, detailed, and non-conjectural to enable the court to conclude there are contested issues of fact going to the resolution of issues necessary to decide the motion.  <u>U.S. v. Batiste</u>, 868 F.2d 1089, 1091 (9th Cir. 1989); <u>U.S. v. Cheely</u>, 814 F.Supp. 1430, 1436 (D. AK. 1992).  The only specific, supported allegation made by the Defendant against the

photo lineup was that the Defendant's photo did not include the partial seal of the State of Alaska contained in the other photos.  The court has the photo lineup to view, and thus does not need an evidentiary hearing to determine that the lineup was not impermissibly suggestive and evidence of the identification is admissible. Even though the Defendant has been provided with police statements related to the photo lineups, the Defendant has not alleged any specific problems, such as suggestiveness in the conduct of the law enforcement officers.  U.S. v. Field, 625 F.2d 862, 869 (9th Cir. 1980).  The Defendant's request for an evidentiary hearing is simply a request for unauthorized discovery.  The only purpose for an evidentiary hearing would be if the court determines that the lineup was impermissibly suggestive, and needs to determine whether the identification meets the five factors of the Biggers test.  The court does not need to determine the reliability of an identification if the lineup is not "impermissively suggestive." Griffey at 1067-68.

VI.  CONCLUSION

The Defendants motion to suppress evidence of the photo lineup and any subsequent in-court lineup should be denied.  The photo lineup shown by the law enforcement officers to the owners of the Laurene Street property was not

impermissively suggestive. The lineup put together by the Department of Motor Vehicles showed 6 photos of individuals with similar appearance. The only difference was minor, that the State of Alaska seal is partially visible in the photos of the others in the lineup. Minor differences do not make a photographic lineup suggestive, much less impermissibly suggestive. Moreover, even if the lineup were impermissibly suggestive, the reliability of the identification is established using the Supreme Court's <u>Biggers</u> test. Thus, evidence of the photographic lineup, along with any appropriate in-court identification, is admissible. Because the court does not need additional evidence to determine that the photographic

//

//

//

//

//

//

//

//

//

lineup was not suggestive, the Defendant's motion for an evidentiary hearing should also be denied.

RESPECTFULLY SUBMITTED this <u>17th</u> day of April, 2006, at Fairbanks, Alaska.

>DEBORAH M. SMITH
>Acting United States Attorney
>
>s/Bryan Schroder
>BRYAN SCHRODER
>Assistant U.S. Attorney
>Federal Building & U.S. Courthouse
>101 12th Avenue, Room 310
>Fairbanks, Alaska  99701
>Phone: (907) 456-0245
>Fax: (907) 456-0577
>Email: bryan.schroder@usdoj.gov
>Bar # 21146

**CERTIFICATE OF SERVICE**

I hereby certify that on April <u>  17  </u>, 2006, that a true and correct copy of the foregoing **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHOTO LINE-UP EVIDENCE AND IN-COURT IDENTIFICATION**, was served, via Electronic Filing, on:

**M.J. Haden**

s/Bryan Schroder