DEBORAH M. SMITH
United States Attorney

BRYAN SCHRODER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska  99701
(907) 456-0245

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S TRIAL** |
| | ) | **MEMORANDUM** |
| v. | ) | |
| | ) | |
| Cleveland Thor Adams, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.    **INTRODUCTION**

         The defendant is charged with one count of bank robbery and one count of

use of weapon during a violent crime.  Trial is set to begin on Monday, June 26,

2006.  The government's case in chief should take 3-4 days.

II.    **STATEMENT OF THE CASE**

A.  **Case Summary**

On May 25, 2005, a gunman entered the True North Federal Credit Union in Fairbanks at approximately 3:00 pm.  True North Federal Credit Union is a Federally-chartered credit union, with assets insured by the National Credit Union Administration.

The gunman handed a black plastic garbage bag to one of the two tellers that was working at the time, and demanded that she put the case in the bag.  He had a silver semi-automatic handgun which he brandished during the robbery. The gunman concealed his identity by wearing a dark hooded sweatshirt with the hood pulled up, and a handkerchief or bandana over his mouth and nose.

The tellers and customers described the gunman as a young, African-American male, 5'6" to 5'7" in height, with a trim physical build.

After the teller put money from her primary drawer into the bag, the gunman demanded "all of it," which she interpreted as the money in her second, back-up drawer.  After she put the remainder of the money into the bag, he instructed her to proceed to the second teller station.  The same teller took money from the primary drawer of the second teller and handed the bag back to the gunman, who left the bank.  At that point, the second teller hit the alarm button. The bank manager later calculated that the robber took $17,695.  Although there

were recorded "bait bills" in the teller drawers, the tellers are trained to avoid the bait bills as a daily practice. In her understandably frightened reaction to the robbery, the teller avoided the bait bills as she commonly did, and failed to include them in money she gave the gunman.

As the gunman left, a man in adjacent building saw him run to a parked car. The man thought it unusual to see someone with a hooded sweatshirt running from a financial institution carrying a plastic garbage bag. He identified the car as a dark colored, late model Mercury Sable.

After the alarm went off, officers from the Fairbanks Police Department responded, and after receiving the description of the car, started looking for it. A short time later, one of the officers noticed a dark blue Mercury Sable parked in front of 1116 27th Avenue, #4. The officer recorded the license number of the car, Alaska ERL 828. He saw nothing unusual in the car, so he moved on. Officers would later determine that 1116 27th Ave, #4 was occupied by an acquaintance of the Defendant.

A short time after the officer saw the car at 1116 27th Ave, another office saw the same vehicle at 1456 Turner Street. As the officer was examining the vehicle, a woman arrived who identified herself as the owner of the vehicle. She told the officers that she had loaned the car to the Defendant at 4:00 am that

morning.  He had recently talked to her on the phone and instructed her to pick up the car at Turner Street.  She gave the officers permission to search the vehicle.  In the vehicle, the officers found a dark gray, hooded sweatshirt, and $3035 in cash, most of it separated by denomination, and paper-clipped together. The officers would later learn that the money taken from True North Federal Credit Union was paper-clipped together by denomination.

At approximately the same time, a mother and son were working an a apartment property owned by the mother on Laurene Street, directly behind the Turner Street address.  The son was working in a shed and saw a young, African-American man look into the shed.  Soon after, the mother came out of one of the apartments with a prospective tenant.  The young African-American man was there, and as the prospective tenant walked to her car, he approached her for a ride.  She declined and quickly left.

The man then approached the mother and son.  They described him as young, approximately 5'7", and 170 pounds.  The son also described the man as having tattoos on his arms.  The man acted nervous, and also asked the pair for a ride to a street corner a couple of blocks away.  When they demurred, he explained that he had $15,000 and would give them $100 for a ride.  The man then pulled out a large wad of money.  The mother and son again refused to

provide a ride, and left.  The man walked away.  On their way out of the neighborhood, they saw officers loading the Mercury Sable onto a tow truck in front of the Turner Street address.  Two days later, an officer from the Fairbanks Police Department showed a photo line-up separately to both the son and the mother.  Both immediately identified the Defendant as the man who asked them for a ride.

### B.  <u>Statement of Facts</u>

At trial, the United States intends to present the following evidence as regards the robbery of the True North Federal Credit Union on May 25, 2006:

1. True North Federal Credit Union is a Federally-chartered credit union, with assets insured by the National Credit Union Association;

2. On May 25, 2005, a gunman robbed the True North Federal Credit Union;

3. The gunman was short in stature, 5'6" - 5'7", trim or thin in weight, young, and African-American;

4. The gunman wore a dark hooded sweatshirt, with the hood pulled up, and a bandana or handkerchief over his face;

5. The gunman carried a semi-automatic handgun;

6. The gunman demanded that a teller put money into a black plastic garbage bag which he provided;

7.    The gunman took $17,695;

8.    The gunman escaped in a dark colored, late model Mercury Sable;

9.    Soon after the bank robbery, police identified a dark blue Mercury Sable, license # ERL 828, at 1116 27th Avenue, #4;

10.    At the time, the occupant of 1116 27th Avenue, #4, was an acquaintance of the Defendant;

11.    The same vehicle, Mercury Sable, license # ERL 828, was identified a short time later parked in front of 1456 Turner Street;

12.    After police discovered the vehicle, the owner arrived and informed the officers that she loaned the car to the Defendant early that morning;

13.    The owner of the vehicle also gave the officers permission to search the vehicle, resulting in the discovery of a dark hooded sweatshirt, and $3035 in cash;

14.    Most of the cash found in the car was sorted by denomination and paper-clipped into bundles;

15.    The money stolen from the teller drawers at True North Federal Credit Union that day was sorted by denomination and paper-clipped together;

16.     While the police were discovering the vehicle and talking to the owner, the owner of the property at 1445 Laurene Street and her son, who were at the property showing an apartment to a prospective tenant;

17.     While there, they encountered a young African-American man looking for a ride;

18.     The man was 5'7", with a trim build and tattoos on his arms;

19.     The man first asked the prospective tenant for a ride Laurene and the Airport Access Road, just 1 block away, which she declined;

20.     The man then asked the owner and her son for a ride, and after their initial refusal told that he did not need their money because he had $15,000, and offered them $100 for a ride;

21.     The man then showed them a large wad of cash;

22.     They refused to give the man a ride, and he walked away while they quickly left;

23.     Two days later, the man and his mother separately identified the Defendant in a photo line-up as the man they encountered;

24.     On May 27, 2005, police officers called a cell phone number they received for the Defendant, and the phone was answered by an airman from Eielson

Air Force Base.  The airman was on a fishing trip and found the phone

along the side of the Parks Highway near Nenana.

### C.    Summary of the Charges

Defendant, Cleveland Adams, is charged in the Indictment with one count

of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of

use of a firearm while committing a violent crime, in violations of 18 U.S.C. §

924(c).

### D.  Witnesses

At trial, the government will call some or all of the following:

1.  One or more of the local and federal law enforcement officers who were

involved in the investigation of this case;

2.  One or more of the bank employees or customers of True North Federal

Credit Union who were in the bank at the time of the robbery;

3.  One or more witnesses from outside the bank;

4.  Witnesses who were at the scene of 1456 Turner Street, or nearby, at

the time the dark blue Mercury Sable was at the address;

5.  Criminalogists from the Alaska Scientific Crime Detection

Laboratoryto discuss efforts to obtain DNA evidence from the hooded sweatshirt,

and fingerprint evidence from recovered cash.

### E.  Exhibits

The government will offer some or all of the following exhibits at trial:

1.  The National Credit Union Administration designation document for True North Federal Credit Union;

2.  Video and captured photos of the robber taken from the camera at True North Federal Credit Union.

3.  Photos of True North Federal Credit Union and the surrounding area.

4.  Photos of 1456 Turner Street and the surrounding area.

5.  The photo line-up used in the case.

## III.    LEGAL/EVIDENTIARY ISSUES

### A.  Expert Witness Testimony

#### General Standards

Expert opinions are admissible if they will assist the trier of fact to understand the evidence or determine a fact in evidence.  Rule 702, Fed. R. Evid. Expert opinions, as opposed to testimony by summary witnesses, may be based on facts or data not admissible into evidence.  Rule 703, Fed. R. Evid.

An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704.  The court has

broad discretion to determine whether to admit expert testimony.  United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987);  United States v. Binder, 769 F.2d 595, 601 (9th Cir. 1985).

The government has provided written notice to the defendant of its intention to provide expert testimony from DNA and fingerprint experts from the Alaska Scientific Crime Detection Laboratory.

### B.  Limits of Relevant Defenses

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908.  The trial court has broad discretion in determining admissibility under Rule 403.  United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

An area of common exclusion involves attempts to confuse the issues or mislead the jury by introducing evidence of matters that do not establish a defense to the charged crimes.  See, United States v. Tidwell, 559 F.2d 262, 266-7 (5th Cir. 1977), cert. denied, 435 U.S. 942 [excluding evidence that defendant's

manipulation of bank funds was beneficial to bank on grounds of danger of confusion of issues and misleading jury where belief in benefit to bank was not a defense to misapplication of funds]; United States v. Johnson, 558 F.2d 744, 746-47 (5th Cir. 1977), cert. denied, 434 U.S. 1065 [excluding evidence of purported overpayment of taxes in fraudulent tax return prosecution on grounds of confusion of issues and improper appeal to emotions of jury].

In addition, although the Ninth Circuit has long recognized that juries have the power to acquit a defendant regardless of the evidence of his guilt, (see, United States v. Simpson, 460 F.2d 515, 518-19 (9th Cir. 1972)), it has never recognized a right held by a defendant to seek such a verdict. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1991). Thus, because a defendant has no right to seek nullification, he has no right to present evidence relevant only to such a defense. See, Zal v. Steppe, 968 F.2d 924, 930 (9th Cir.), Trott, J., concurring, cert. denied, 113 S.Ct. 656 (1992).

//

//

//

//

RESPECTFULLY SUBMITTED this 22nd day of June, 2006, at

Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney


s/ Bryan Schroder
Assistant United States Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: bryan.schroder@usdoj.gov


**DECLARATION**

I hereby certify that on June 22, 2006,
a copy of the foregoing was served electronically on:

MJ Haden

s/ Bryan Schroder